(No. 40737.—

JAMES C. THOMPSON *et al.,* Appellants, *vs.* ELMER CONTI *et al.,* Appellees.

*Opinion filed January 19, 1968.*

GEORGE B. COLLINS, of Chicago, for appellants.

ADAMOWSKI, NEWEY & RILEY, of Chicago, (FRANCIS X. RILEY, of counsel,) for appellees.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

Certain electors of Leyden Township in Cook County filed a complaint for *mandamus* and declaratory judgment seeking to void the town meeting held April 4, 1967. This action was subsequently consolidated with a chancery action instituted by opposing electors who sought to enjoin a special town meeting called for May 2. Following a hearing the trial court entered its judgment orders finding the April 4 meeting to have been been "properly called and held", denying the petition for *mandamus,* dismissing the complaint for declaratory judgment, and enjoining the town clerk from convening the May 2 meeting. From these judgments a direct appeal here is predicated on the ground that denial of admission to the town meeting of qualified electors constituted a violation of section 18 of article II of the Illinois constitution providing "All elections shall be free and equal", and deprived those denied admission of the equal protection of the laws guaranteed them by the fourteenth amendment to the Federal constitution.

Leyden Township is a heavily populated township in which are located three large municipalities, Franklin Park, Elmwood Park and Schiller Park. Its town hall is located in Franklin Park. Among the defendants in the *mandamus* action were Chief Koerber of the Franklin Park Police Department, Elmer Conti, President of the Village Board of Elmwood Park, Township Supervisor Phillips, Town Clerk Cullerton, and Harry Smith, the moderator of the April 4 town meeting. The annual town meeting date is established by statute as the first Tuesday in April at 2:00 P.M. (Ill. Rev. Stat. 1965, chap. 139, par. 50.) Although the statute (par. 53) provides that the board of town auditors shall fix the meeting place, the Leyden Township electors at the 1966 annual meeting had fixed the 1967 meeting place as the town hall, the same building at which the 1966 meeting had convened and then adjourned to the

Elmwood Park High School in order to accommodate the nearly 400 people who attended.

A fair appraisal of the evidence indicates the following: Conti, Phillips and Cullerton were the leaders of a faction which had been outvoted at the 1966 town meeting subsequent to its adjournment to the high school where many more people could be admitted. Town auditors Bork, Marszalek and Jackson (a majority of the board of auditors) represented an opposing group. Several days prior to the 1967 annual meeting a letter from the State fire marshal was received by the town clerk apparently responding to an inquiry by the clerk regarding the capacity of the town hall council chambers. That letter indicated no more than 48 persons should be present at one time. Apparently a Lt. White, whose identity and authority are otherwise unshown, later indicated 58 persons would be proper.

The town hall office of Supervisor Phillips had a side door through which persons could enter from outside the building and go into the council chambers. On the evening of April 3 Phillips remained in his town hall office after normal closing hours. Apparently suspecting some chicanery, auditors Bork and Marszalek either remained at, or returned to, the hall. While Phillips did not testify, it is established that he called Conti late in the afternoon, reported that Bork and Marszalek and several other persons were in the town hall and would not leave. He asked Conti "what he should do about it", and Conti testified he told Phillips to call Chief Koerber and have him send officers to guard the building and that all persons should then leave and return the following morning. The officers came, but no one left.

Apparently at Bork's request one of the officers later handcuffed the meeting room doors together, but subsequently removed the handcuffs at Chief Koerber's direction. Auditor Bork then chained the door handles together and padlocked them. The Conti group thereafter secured a

hammer, chisel and bolt-cutter and the chain was cut. There were several telephone calls between Conti and Phillips, and about 10:00 P.M. Conti commenced calling electors in the township and asking them to come to the town hall. He characterizes his actions as "in the interests of good government" and testified "this year we outsmarted them and did the same thing that they did the last year." Electors, apparently 30 to 35 in number, responded to Conti's call, came to the town hall with him after midnight, entered through Phillips's side door and went into the council chambers where they remained.

In order to retain control of the meeting or, depending on which version of the intent with which it was done is believed, in order to comply with fire regulations, a plan was adopted by the Conti-Phillips group whereby only those persons possessing "chits" (small squares of paper), numbered from 1 through 58, would be admitted to the meeting room. These were prepared in Phillips's office in Conti's presence by an attorney (appointed by Phillips as township attorney on April 5) and initialled by an Elmwood Park police officer, and one was then given to each of the persons (who had appeared at Conti's request) then seated in the meeting room. This apparently occurred between 2:00 A.M. and 3:00 A.M. by which time police officers from Franklin Park, Elmwood Park and Schiller Park were at the town hall. Some of these officers were stationed at the doors of the meeting room to prevent the entrance of persons without "chits", and no elector without such admission ticket was thereafter permitted to enter the room. Police officers in increasing numbers remained at the town hall until completion of the annual meeting that afternoon.

While several persons testified they were able to borrow or obtain "chits" even though not members of the Conti-Phillips-Cullerton faction, it is clear that this occurred in very few instances. Many individuals testified they were refused tickets or admission to the meeting although they

were qualified electors, and, as the meeting hour approached, additional and substantial numbers of electors sought admission to the town hall and were refused. When a reason was given for the refusal it was either that there were no more tickets or that the capacity, under fire regulations, had been reached.

An assistant Cook County State's Attorney and an officer from the State's Attorney's police were apparently called by the Bork-Marszalek group and appeared at the town hall on April 4 shortly before 2:00 P.M. They were denied admission to the meeting room until they had been taken to Phillips's office and there talked to Conti who asked a fireman whether "an exception" could not be made in their case and they were thereafter admitted. The assistant State's Attorney and accompanying officer testified that there were 8 to 10 police officers in the meeting room carrying "riot sticks", "big long thick Billy clubs". It was also established that each of the officers wore his usual side-arm and that a shotgun and several rifles were brought to the hall by the officers, but the latter seem to have been left in Phillips's office. Several of the officers were equipped with small tear gas sprays.

The town meeting was called to order at 2:00 P.M. At that time police officers in addition to those in the meeting room were stationed at all doors to the town hall with instructions to exclude all except those with "chits". Defendant Smith was elected moderator, a motion to move to another location to accommodate those electors denied admission was by him ruled out of order, the budget and appropriation ordinance adopted, Supervisor Phillips was designated purchasing agent and authorized to employ personnel for the township, and other action was taken. The *mandamus* action was filed April 10 and on April 11 a majority of the township board of auditors, with Supervisor Phillips voting "present" and Town Clerk Cullerton voting

"nay", called the May 2 special meeting. The action to prevent that meeting from being held followed.

Defense counsel here makes no attempt to defend the "ticket" system used by defendants. He likewise concedes, as he must, that the constitutional guarantee of free and equal elections applies to town meetings as well as other forms of election. He argues, however, that because he concedes applicability of the constitutional provisions and does not defend the methods used by defendants, no constitutional question exists warranting direct appeal here. It seems to us obvious that a constitutional question is presented by this record. (*Reynolds* v. *Sims,* 377 U.S. 533, 12 L. Ed. 2d 506, 84 S. Ct. 1362; *Craig* v. *Peterson,* post p. 191, and cases there cited.) The fact that a substantial number of Leyden Township electors were disenfranchised by the conduct of defendants does not vanish simply because defendants now concede this occurred. The constitutional questions were raised by the pleadings, and the trial court's denial of relief effectively resolved those issues in favor of defendants. The case is properly here on direct appeal.

Defendants additionally urge that the disposition of the cases by the trial court was a practical solution of the problem: that no dispute existed regarding the budget for the coming year since it had received unanimous approval by the board of auditors prior to the annual meeting; that the real dispute was as to "patronage—the hiring and firing of township employees—and that, although Phillips was given that authority at the April 4 meeting, the legislature shortly thereafter (and as a direct result of the conduct of this meeting) amended the statute (4, Ill. Leg. Service, 1967, p. 765) to place employment powers in the hands of the board of auditors; that since there was no disagreement about the budget and the "patronage" issue has been resolved by statutory amendment, no useful purpose would

be served by issuing the writ of *mandamus*. Our attention is called to language of this court in *People ex rel. Adamowski* v. *Wilson*, 20 Ill.2d 568, 578-9, where we said of *quo warranto* that a factor emphasized in determining whether the court's discretionary authority shall be used to allow or deny the remedy is "whether the public interest will be served or damaged   *   *   *."

We do not agree that the case is moot for, while the board of auditors had unanimously approved the tentative budget and appropriation ordinance, and anticipated no difficulty about it at the meeting, the excluded electors had a constitutionally guaranteed right to be present, to be heard and to vote thereon as well as on the other matters of business transacted at that meeting. Nor can it be said with any degree of certainty that those electors illegally excluded from the meeting might not have questioned other or all of the items upon which action was taken, or proposed new or different matters. While the action of the General Assembly resolved the so-called "patronage" question, this was only one of many matters acted upon at the April 4 meeting. And, while defendants argue the practicality of the trial court's action, our belief is that the public interest is not well served by condoning in any manner the flagrant disregard of constitutionally guaranteed rights evidenced by this record.

It may be that the town meeting is no longer a practical means of governing densely populated townships in which 100,000 or more persons reside; it may even be that townships have outlived their usefulness as political entities. But such decisions, if necessary, are not for courts to make. Our duties require enforcement of those constitutional and statutory provisions designed to assure each elector an equal voice, if he desires to speak, in his annual town meeting, and we may not avoid effective implementation of those rights because of a lack of sympathy for township government. The methods employed by defendants here—sum-

moning to the patently inadequate meeting room in the dead of night a number of their supporters sufficient to control the 2:00 P.M. meeting; devising a system whereby tickets are given such supporters permitting free ingress and egress from that room; providing guards armed with guns and riot clubs to prevent the entrance of other qualified electors, refusing to permit even a vote upon a motion to adjourn the meeting to more adequate quarters; and directing 8 to 12 police officers with their guns and riot clubs to remain in the meeting room during a meeting in which there was not the slightest hint of disorder while other similarly armed officers barred the entrances to the building—all these are typical of the type of intimidation and coercion found in a police state, but which are totally opposed to the guarantees of free and equal elections provided by our State and Federal constitutions. We hold the April 4 meeting void.

The judgments of the circuit court of Cook County are reversed and the cause remanded with directions to issue the writ of *mandamus* as prayed.

*Reversed and remanded, with directions.*