**Dr. Gary L. Phillips, S.T.D., for Himself and on Behalf of All Similarly Situated, Plaintiff-Appellant, v. Village of Libertyville, a Municipal Corporation of Lake County, Illinois, et al., etc., Defendants-Appellees.**

Gen. No. 69–175.

Second District.
March 2, 1970.

Thomas H. Ploss, of Libertyville, for appellant.

Overholser, Flannery & Dunlap, of Libertyville, for appellees.

MR. JUSTICE ABRAHAMSON delivered the opinion of the court.

This class action for a declaratory judgment of the constitutionality of the Libertyville Fair Housing Ordinance, filed by Dr. Gary L. Phillips on behalf of himself and others similarly situated, was transferred to this court by the Supreme Court of Illinois. No constitutional issue was presented on plaintiff's direct appeal to that court, since the trial court had declined to rule on alleged constitutional questions, but had dismissed the complaint on the grounds that plaintiff lacked standing to seek a declaratory judgment, and that there was no actual controversy between plaintiff and defendants. It is, therefore, incumbent upon this court, under the transfer order, to determine whether a justiciable controversy is presented under the Declaratory Judgment Act, and whether the plaintiff has the legal standing to seek relief.

The facts respecting these issues are essentially not in dispute. At the time the complaint was filed plaintiff, a member of the clergy, had been a resident and elector of the Village of Libertyville for seven years. He was, and still is, an apartment dweller, but not a property owner. Plaintiff had participated with other residents in urging passage of a fair housing law in Libertyville. Initially, on June 11, 1968, the Village Council passed a broker-licensing type of fair housing law, (No. 68-0-19), which was repealed on August 27, 1968, when the Village passed the more comprehensive fair housing ordinance involved herein.

Plaintiff challenges the constitutionality of the following provisions contained in that ordinance: The appointment of a Human Relations Commission composed only of property owners in Libertyville; the prohibition of discriminatory acts in connection with the sale, lease or showing of real property only "to any financially qualified person," with no standards set for the deter-

174

mination of financial qualifications; the requirements of "specific intent" to violate the law, a $25 filing fee before any complaint of discrimination may be heard by the Commission, and the application of strict rules of evidence at any Commission hearing; and the designation of any "unfounded" complaint as a violation of the ordinance.

Plaintiff instituted this declaratory judgment action shortly after the ordinance was passed, and before the defendant Village Board appointed a Human Relations Commission. The circuit court denied all motions interposed by plaintiff. It denied a temporary restraining order to prevent the appointment of a Commission under this ordinance; denied an amendment to the complaint alleging the appointment of the Commission; denied joinder of members thereof as parties defendant; denied the intervention of Lake County Migrant Council; denied a preliminary injunction after an alleged verbal attack on plaintiff by a Village Board member at a public hearing.

The court, however, sustained defendants' motion to strike a major portion of the complaint, including allegations relating to the legislative history of the Libertyville Fair Housing Ordinance, to plaintiff's participation in securing its passage, and to the conduct of the defendant Board manifesting an intent to bar plaintiff from serving on the Commission. The circuit court then sustained defendants' motion to dismiss the complaint. In its oral opinion the court indicated that no ruling was being made upon the merits, but that the action was dismissed because plaintiff did not have sufficient standing to bring an action under the Declaratory Judgment Act.

In reviewing that judgment pursuant to the transfer order of the Illinois Supreme Court, we note first that the Illinois Declaratory Judgment Act (c 110, par 57.1, Ill Rev Stats 1967) provides that "the court may in

cases of actual controversy make binding declarations of rights, having the force of final judgments whether or not any consequential relief is or could be claimed . . . including the determination of . . . the construction of any . . . municipal ordinance . . . and a declaration of the rights of the parties interested."

Defendants, while admitting that the Illinois Declaratory Judgment Act permits a declaratory judgment, "whether or not any consequential relief is or could be claimed," promptly read that clause out of the Act. Defendants argue that because plaintiff cannot demand his immediate seating on the Libertyville Human Relations Commission as a consequence of this action, therefore plaintiff is requesting only an "advisory opinion" from this court, in violation of settled principles of law prohibiting such opinions.

We cannot accept defendants' construction of the Act. In Exchange Nat. Bank of Chicago v. County of Cook, 6 Ill2d 419, 421, 422, 129 NE2d 1, it was held that the Illinois Declaratory Judgment Act does not authorize the declaration of rights involving mere abstract propositions of law without regard to the interest of the parties, but requires the existence of an "actual controversy," as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. In explaining an "actual controversy" the court quoted at p 422:

> "Where there is such a concrete case admitting of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged, the judicial function may be appropriately exercised even though the adjudication of the rights of the litigants may not require the award of process or the payment of damages."

Applying that criteria to the case here, it is evident that plaintiff and members of his class are electors who are presently disqualified by the Libertyville ordi-

176

nance from ever serving on the village Human Relations Commission simply because they are not property owners. They argue that such ordinance deprives them of constitutional rights and is invalid. Their interests are certainly adverse to those of the defendant Village Board which insists that the ordinance is constitutional and that the Board has a right to permit only property owners to be members of the Human Relations Commission in order to effectuate the Board's conception of fair housing. An adjudication of unconstitutionality, while it would not insure plaintiff an appointment on the Commission, would permit plaintiff and members of his class to be eligible for service on the Human Relations Commission, along with other electors. They would no longer be automatically barred as they are now, and as defendants claim they should be. In our judgment this case admits of "an immediate and definitive determination of legal rights of the parties in an adversary proceeding" and, therefore warrants application of the Declaratory Judgment Act. Our conclusion, moreover, is supported by precedent.

Analogy may be made to Otley v. Common Council of the City of Milwaukee, 281 F Supp 264 (USDC Wis 1968). There the declaratory judgment procedure was deemed proper to determine the constitutionality of a City Council resolution, which, if passed by the voters, would have prevented enactment of a fair housing ordinance. As in the case before us, the defendant city argued there, that there was no controversy between adverse parties. In rejecting that contention the court stated at p 274:

> "A controversy undoubtedly exists . . . between the plaintiff and his class and those who seek to deprive them of the right to equal protection of laws. The Common Council is involved in this deprivation, and it is clear from the record it will continue to be

> involved adversely should the resolution pass, by refusing to consider action in contravention of its terms. . . ."

In Otley the decision declaring the City Council resolution unconstitutional does not insure enactment of a fair housing law any more than a decision holding the property ownership requirement in the Libertyville ordinance unconstitutional insures plaintiff an appointment on the Commission. However, in both cases the declaration of the unconstitutionality of the laws determine adverse rights of the parties, and eliminate what one side regards as an unconstitutional barrier. Those results are neither hypothetical, nor advisory; and if a declaratory judgment was properly available in Otley, it should certainly be available in the case before us.

The Illinois Supreme Court recently in Thompson v. Conti, 39 Ill2d 160, 233 NE2d 351, entered a declaratory judgment at the instance of certain electors of a township who sought to have their town meeting declared void because it was conducted in a manner that deprived them of constitutionally guaranteed political rights. There plaintiffs received no more "consequential relief" than would plaintiff herein, nevertheless, the court found a sufficient justiciable controversy to warrant a declaratory judgment.

We find determinative the decision of the United States Supreme Court in Moore v. Ogilvie, 89 S Ct 1493. There candidates for public office brought suit for a declaratory judgment on the constitutionality of an Illinois statute requiring statewide signatures on nominating petitions. Although the election was over, and a decision there, as in the case before us, would in no way insure plaintiffs the right to public office, the United States Supreme Court held that the case presented a justiciable controversy for which relief could be had un-

der the Illinois Declaratory Judgment law. The Supreme Court stated:

"Appellees urged in a motion to dismiss that since the November 5, 1968 election has been held, there is no possibility of granting any relief to appellants, and that this appeal should be dismissed. But while the 1968 election is over, the burden which MacDougall v. Green, supra, allowed to be placed on the nomination of nominees for statewide offices remains and controls future elections, as long as Illinois maintains her present system as she has done since 1935. The problem is therefore 'capable of repetition, yet evading review.' Southern Pac. Term. Co. v. Interstate Commerce Comm., 219 US 498. The need for its resolution thus reflects a continuing controversy. . . . We turn then to the merits."

In the case before us the Libertyville ordinance also presents a continuing controversy in that it excludes from the Human Relations Commission all persons, including plaintiff, who are not property owners. The electors in plaintiff's class, deprived of an opportunity of even being considered for the office, would continue to claim that this exclusion creates an unreasonable classification, inviting discrimination in housing in violation of the Equal Protection Clause. Unless the issue can be resolved by a declaratory judgment the problem would also be "capable of repetition, but evading review." Therefore, the reasoning of the United States Supreme Court in the Moore case is equally applicable here, and defendants' contention that no "actual controversy exists" must be rejected.

The cogency of the Moore case is in no way limited by the decision of the United States Supreme Court in Hall v. Beale, 90 S Ct 200, as defendants contend. In

179

Hall plaintiff challenged in a declaratory judgment proceeding the constitutionality of certain residency requirements for voting. After the election, and prior to a hearing, the law was changed, reducing the residency requirements from six to two months. Under the amended law plaintiff there would not have been barred from voting either at the time of the election, or at the time he instituted suit, and was in no way affected by the two month residency requirement. Consequently, the court held that the constitutionality of the residency requirements was entirely "advisory" with respect to plaintiff, and stated at p 201:

> "And under the statute as currently written, the appellants could have voted in the '68 presidential election. The case has therefore lost its character as a present live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law. (Citation.) . . . But the appellants' opposition to residency requirements in general cannot alter the fact that so far as they are concerned nothing in the Colorado legislative scheme as now written adversely affects their present interests, or their interests at the time the litigation was commenced."

In the case before this court there has been no intervening change in the law. Quite the contrary, the letter attached to the supplemental pleadings indicates that the Libertyville Board has no intention of eliminating the requirement that members of the Human Relations Commission must be property owners. Therefore, plaintiff and members of his class will continue to be automatically barred from the Commission and deprived of what they regard as their constitutional right as electors. An opinion here, unlike Hall, would certainly not be advisory.

180

Nor do we find support for defendants' argument in any other cases cited by them. State Farm Mut. Automobile Ins. Co. v. Morris, 29 Ill App2d 451, 173 NE2d 590, advancing a restrictive construction of the Declaratory Judgment Act, has neither been adhered to, nor represents the weight of authority on this issue. Apex Mut. Ins. Co. v. Christner, 99 Ill App2d 153, 173, 240 NE2d 742; Lincoln Cas. Co. v. Vic & Marios, Inc., 62 Ill App2d 262, 210 NE2d 329; County Mut. Ins. Co. v. Bergman, 38 Ill App2d 268, 185 NE2d 513.

■ Closely related and inextricably connected with the requirement for an "actual controversy" under the Declaratory Judgment Act is the issue of plaintiff's "standing" to present that controversy. We are cognizant of the established principle that the court will not consider the invalidity of any provision where the party urging such invalidity is not aggrieved by its operation. Hornoff v. The Kroger Co., 35 Ill2d 125, 129, 219 NE2d 512; People ex rel. Director of Department of Children and Family Services of Illinois v. Illinois Protestant Children's Home, Inc., 33 Ill2d 60, 64, 210 NE2d 217.

As defined in Baker v. Carr, 369 US 186, 204, "standing" is "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions."

In Flast v. Cohen, 392 US 83, 101–102, the Supreme Court explained that the various rules of standing have not been developed in the abstract, but have been fashioned with "specific reference to the status asserted by the party whose standing is challenged, and to the type of question to be adjudicated."

■ ■ In this case the pleadings reveal plaintiff's "standing" to challenge the property ownership requirement and other provisions of the Libertyville Fair

Housing Ordinance. As previously noted, plaintiff as an elector and resident of Libertyville for over seven years obviously would have been eligible under the Illinois Constitution and statutes to hold public office on the Human Relations Commission were it not for the provision of the ordinance specifying that Commission members must be property owners. Plaintiff and members of his class, who were all renters and not property owners, were automatically barred from consideration with other electors for appointment to the Commission. Persons cannot be barred from holding public office by criteria forbidden by the Constitution. Torcaso v. Watkins, 367 US 488, 496. Consequently, plaintiff, as a member of the excluded class had a constitutional right to vindication here, and a personal stake in the outcome of this controversy. Baker v. Carr, 369 US 186, 204. (See also 35 U Chi L Rev 601.)

We find apposite the statement in Kelley v. Metropolitan Board of Education, 293 F Supp 485, 491 (USDC Md 1968) respecting the issue of "standing":

> "The court would be hard pressed to conceive of more appropriate parties to complain because of the suspension, or of persons more directly, adversely and personally affected."

Moreover, we are also cognizant that plaintiff's "standing" was further enhanced by the original allegations in the complaint pertaining to the legislative history of the ordinance, to plaintiff's role in its enactment, and to the possible intention of the defendant Board to bar him from serving on the Commission. All of those allegations, included in the original complaint, were stricken as irrelevant by the circuit court. The relevancy of legislative history and circumstances of enactment in determining the construction and validity of laws is well established. City of Chicago v. Max, 289

182

Ill 372, 124 NE 648; Chicago Real Estate Board v. City of Chicago, 36 Ill2d 530, 224 NE2d 793. Moreover, where the equal protection clause is the basis of the action, as in the case here, the United States Supreme Court has held that discrimination must be shown by facts alleged in the complaint. Snowden v. Hughes, 321 US 1, 10. Notwithstanding these rules of law, the trial court struck all such allegations from the complaint, and then concluded that plaintiff had no "standing" to bring the action. This was error. All of such alleged facts were relevant in determining realistically rather than abstractly, the issue of plaintiff's standing to challenge the property ownership requirement for Commission members as well as all those other sections affecting redress under the Libertyville Fair Housing Ordinance.

Under our analysis of the issues involved in this transferred appeal, the judgment of the circuit court dismissing plaintiff's complaint was contrary to law, and the cause is reversed and remanded with directions to reinstate the complaint and consider the merits of the constitutional issues presented therein.

Judgment reversed and remanded with directions.

DAVIS, P. J. and SEIDENFELD, J., concur.