GERALD BOYTOR, Plaintiff-Appellant, *v.* THE CITY OF AURORA *et al.*, Defendants-Appellees.

Second District    No. 78-28

Opinion filed March 30, 1979.

304

NASH, J., dissenting.

Suzan Sutherland, of the State Board of Elections, of Springfield, Michael L. Levinson, Michael E. Lavelle, and Franklin J. Lunding, Jr., all of Chicago, and Marc E. Webbles, of Geneva, for appellant.

Puckett, Barnett, Larson, Mickey, Wilson & Ochsenschlager and J. Robert Murphy, both of Aurora, for appellees.

Mr. JUSTICE WOODWARD delivered the opinion of the court:

This is an action brought by the plaintiff, a resident, taxpayer, registered voter and person who was interested in becoming a candidate for the office of mayor of the city of Aurora. Plaintiff seeks (1) a declaratory judgment that a referendum and subsequent primary election

held pursuant to said referendum for the offices of mayor and alderman of the city of Aurora was unlawful; (2) an injunction restraining future violations of the election code by the city of Aurora and (3) money damages for the plaintiff because he was denied the opportunity to run for mayor. The defendants, city of Aurora and Aurora Election Commission, filed a motion to dismiss which was allowed by the trial court and the plaintiff appeals from that order.

At the general election held on November 2, 1976, the voters of the city of Aurora rejected a proposition to retain the commission form of government and a proposition to adopt the city manager form of government; thereby the city of Aurora voters chose to revert to the mayor-council form of government. On December 7, 1976, the city counsel adopted a resolution to submit to a referendum the question as to (a) whether all city elections should be nonpartisan and (b) whether the primary election should be held in March and the general election be held in April for the year 1977 and that all future primaries be held on the date set by the State Election Code. On December 11, 1976, plaintiff filed his petition to be placed on the ballot as a Democratic candidate for mayor in the election which would have been held in February 1977 pursuant to the Election Code (Ill. Rev. Stat. 1977, ch. 46, par. 7—5). Plaintiff was the only person to file as a partisan candidate in the primary election which would have been held in February 1977. On January 11, 1977, the referendum was held pursuant to the December 7, 1976, resolution; the proposition was adopted with 10% of the voters voting.

Since the referendum passed, the new plan for the primary election provided that the primary would be held in March 1977; that candidates would run on a nonpartisan basis; and they would be permitted to file nomination papers up to and including January 31, 1977. Four candidates filed for mayor under this new method of holding the primary election. The plaintiff did not file; however, he did file objections to the nominating petitions of all of the independent candidates before the election commission; these objections were denied. In his complaint he alleges that he requested instructions from the Aurora Election Commission but received no advice as to what further qualification procedures would be necessary to permit him to appear on the ballot. On oral argument, plaintiff's attorney stated that plaintiff was waiting for a response from the office of the Illinois Attorney General as the State Election Board had requested an opinion from him regarding the referendum; the response merely cautioned the State Board not to get involved.

The primary election was held on March 8, 1977; plaintiff's name did not appear on the ballot. On April 4, 1977, the general election was held and a mayor and city council were elected; this administration took office on April 19, 1977, and has been in office since that time. On June 8, 1977,

the plaintiff requested and was granted an opportunity to speak before the city council at its meeting on June 14, 1977; the topic was the financial position of Aurora for the future. In a counteraffidavit filed in this proceeding the plaintiff states that he was in the office of the election commission in mid-February, 1977, and examined the minutes and correspondence covering the period from November 1976 to February 1977; also, plaintiff states that on May 18, he again examined the minutes and correspondence of the election commission for the period from November 1976 to that date.

Plaintiff instituted this action on July 8, 1977; he contends that the January 11, 1977, referendum described above and the March 8, 1977, nonpartisan primary election were unlawful for the following reasons: (1) that section 28—4 of the Election Code (Ill. Rev. Stat. 1977, ch. 46, par. 28—4) requires that a minimum of 78 days intervene between the date of adoption of a resolution calling a referendum and the date on which the referendum is held; (2) that even though the city of Aurora is a home-rule unit, it is not authorized to change the date of the primary or to provide for a nonpartisan election. The State Board of Elections has filed a brief as amicus curiae in support of the plaintiff's position on the theory that the State Constitution places the authority to regulate the entire election process in the General Assembly even though the city of Aurora is a home-rule unit.

■■ We have carefully examined the issues presented by this appeal and the events that preceded this litigation. Under all the facts and circumstances set forth in the pleadings, affidavits and exhibits attached thereto we hold that plaintiff has no standing to prosecute this litigation because he waited too long to assert the illegality of the referendum, primary and general election that he now seeks to have declared unlawful. An analysis of the following facts support this conclusion. On December 7, 1976, the city council adopted the resolution to hold the January 11 referendum described above. Plaintiff claims that this referendum proposed by the December 7 resolution violates section 28—4 of the Election Code because 78 days did not elapse between the adoption of the resolution and the date of the referendum. Plaintiff had ample time to bring this contention before the Board of Elections and, if necessary, the question could have been adjudicated in the judicial system. Furthermore, the date of the nonpartisan primary was fixed pursuant to the referendum held on January 11, 1977. Again plaintiff failed to take any legal action to assert the position he now poses although almost 60 days intervene between January 11, 1977, and March 8, 1977 (primary election date). Twenty-seven days after the alleged "illegal" primary of March 8, 1977, the general election for mayor and council was

held and approximately 95 days after the general election this action was instituted.

■■ Plaintiff seeks to justify his failure to act by stating that he was waiting for an opinion from the Attorney General or from the State Board of Elections neither of whom are required to render legal advice in such a situation. This excuse is belied by the fact that plaintiff filed objections to the nominating papers of the independent candidates with the election commission; further, he examined the records of the election commission in February 1977; he states no reason as to why he could not have pursued his present course in the courts as early as December 1976, when the referendum resolution was adopted. In short, the plaintiff knew or could have ascertained in December 1976 or January 1977 the irregularities he now asserts in the conduct of the referendum and the primary election of the city of Aurora.

By failing to institute any proceedings before the election, he has waived or he is now estopped.

Plaintiff was not without a remedy. He simply waited too long. In *Allen v. Powell* (1969), 42 Ill. 2d 66, a taxpayer sought to enjoin the Secretary of State from accepting or filing nominating petitions or statements of candidacy in connection with a special primary election. The injunction was denied; however, our supreme court indicated that there would be a remedy in a proper case by the following language at page 68:

"It has been held that injunctive relief will be granted to prevent a waste of public funds by the holding of an election under an unconstitutional election statute. [Citation.] It follows that any election called in violation of the constitution likewise may be restrained and an action for injunctive relief is a proper remedy."

■ Plaintiff does not proceed in this cause by quo warranto to oust the mayor or the council of Aurora; he requests a declaration or order stating that the 1977 primary election of the city of Aurora was unlawful. We find no authority or precedent for such a broad sweep which would certainly leave the government of the city of Aurora in a precarious position. Our examination of the law indicates that there are two types of legal proceeding by which the office or position of a public official may be attacked: (1) an election contest in which the result (votes count) of the election is determined or (2) a quo warranto proceeding contesting the qualifications or the validity of the election of the office holder. The relief sought here by the plaintiff is very similar to quo warranto and therefore we believe that the law applicable to such an action is pertinent here.

■■ In a quo warranto proceeding, the trial judge is given discretion in granting or refusing relief depending upon the public interest, the

motives of the petitioner and all other circumstances and conditions involved. In *People ex rel. Goldberg v. Delaney* (1968), 39 Ill. 2d 474, the trial judge declined to issue a writ of quo warranto because to do so would cause confusion; on appeal our supreme court held that the discretion was properly exercised by refusing the writ. Since plaintiff in this proceeding seeks a result similar to the relief granted in a quo warranto proceeding, we hold that the public interest and all the circumstances of this case require that the relief sought by the plaintiff should be denied.

■■ Further, the doctrine of res judicata may be applied to this proceeding on the theory that the objections filed by plaintiff before the election commission were denied and the failure of the plaintiff to appeal the ruling on these objections now prohibits the attack made in this case. In *Black v. Termunde* (1973), 14 Ill. App. 3d 937, a two-count petition was filed; count I contesting the result of the election and count II claiming that the nominating process used was invalid. The court stated that the only method of testing the validity of an election is by an action of quo warranto. The petitioner contended that since she had contested the nomination before the electoral board, by an administrative review proceeding and by way of a mandamus action which was unsuccessful, she asserted that she had not waived her right to object to the legality of the nomination in the proceeding instituted after the election had been held. The court found that the present petition was an attempt to reconsider issues which were previously presented and therefore the action could be barred under the doctrine of res judicata. The court finally concluded its view of the second count which contested the nominating procedures with the following language: "* * * an appeal could have been taken from the order entered in the administrative review proceeding which affirmed the electoral board's initial determination concerning the objectors' petition. The trial court's dismissal of the second count of the petition on the ground of res judicata was the proper result." *Black v. Termunde* (1973), 14 Ill. App. 3d 937, 941.

We are not unaware of the importance of having an adjudication of the rights of a home-rule municipality to change the dates of an election and also to change from a partisan to a nonpartisan form of ballot. It is noted however, that in 1978 legislation was passed concerning the conduction of municipal elections and these new laws, while not applicable to the issues raised by the plaintiff here, do supersede portions of the Election Code brought in question in this case. More important than a decision on the rights of a home-rule municipality in this area is the precedent that would be set by a decision in this case on the merits. Such a ruling would be precedent for a registered voter to remain silent prior to an election and then some months later have a court declare the election

illegal, thereby leaving the official or officials involved in a state of suspension until ousted by quo warranto or until a new administration is provided either at the next general election or the special election called for that purpose.

In count II, plaintiff asks that defendant be enjoined from future violations of the Election Code. The city and the election commission is obligated to do this regardless of the decision here; plaintiff has a remedy if such violation does occur in the future. Plaintiff has not presented any issues for review as to count III and therefore we do not discuss it.

Accordingly, this appeal is dismissed for the reasons that (1) plaintiff does not have standing to bring this cause of action because he waited too long, (2) plaintiff's cause of action is barred by the doctrine of res judicata and (3) that the public interest of the city of Aurora mandates this result.

Appeal dismissed.

RECHENMACHER, J., concurs.

Mr. JUSTICE NASH, dissenting:
I respectfully dissent. The majority has determined it may not consider the issues presented by this appeal and must dismiss its finding that plaintiff lost standing to bring the declaratory judgment action by waiting too long, that he is barred by the doctrine of res judicata and that the public interest of the city of Aurora mandates that result. I do not agree with these determinations and believe we should consider the merits of the serious and continuing constitutional issue which is before us.

Plaintiff clearly had standing to bring this action as a voter, taxpayer and candidate for the office of mayor of Aurora. (See *People ex rel. Engle v. Kerner* (1965), 32 Ill. 2d 212, 205 N.E.2d 33, *appeal dismissed* (1966), 384 U.S. 30, 16 L. Ed. 2d 332, 86 S. Ct. 1284; *Phillips v. Village of Libertyville* (1970), 120 Ill. App. 2d 172, 256 N.E.2d 351.) The short delay brought about by his efforts to resolve the matter with the Aurora Election Commission and through the State Board of Elections and Attorney General does not suggest a basis for loss of his right to bring the action. If the majority relies upon principles of waiver, estoppel or laches, I note these affirmative defenses were not raised in defendant's motion to dismiss and could not properly be relied upon by the trial court in its granting of that motion. (*People ex rel. Lasser v. Ramsey* (1959), 23 Ill. App. 2d 100, 161 N.E.2d 690; *Orchard Brook Home Association, Inc. v. Joseph Keim Land Development Corp.* (1978), 66 Ill. App. 3d 227, 382 N.E.2d 818.) I also suggest that the doctrine of res judicata is not applicable here, as it may only apply to an earlier final judgment rendered

by a court of competent jurisdiction and not to a determination by the Aurora Election Commission as in this case. *Matchett v. Rose* (1976), 36 Ill. App. 3d 638, 344 N.E.2d 770.

The further conclusion of the majority that the public interest in the city of Aurora mandates dismissal of this appeal is not persuasive in light of the clear and continuing violation of the Election Code and Illinois Constitution here presented. This has resulted in the election of a mayor and council members to four year terms of office in a manner and at a time not authorized by the Election Code. We should take notice in this regard that as shown by the specimen ballot published by defendants, a nonpartisan election will be held in Aurora on April 3, 1979, at which four aldermen will be elected. If political party participation in this election has been barred by virtue of the usurpation of authority over the election process by the city of Aurora presented in this case, as I believe it has, then it represents a further demonstration of the compelling public interest to which we should give our attention.

I share the view of plaintiff and the State Board of Elections that the city of Aurora does not have the power to avoid the provisions of the Election Code which require it to hold partisan primary and general elections and do so on days fixed therein (Ill. Rev. Stat. 1975, ch. 46, pars. 2—29, 7—1, 7—2, 7—5). Defendants rely upon Aurora's power as a home-rule unit to, by referendum, alter its form of government and method of selection of its officers as supporting its departure from the Election Code. It contends it may thereby validly fix the dates upon which it will hold elections and may permit only independent candidates to participate therein.

As I see it, however, article III, section 4, of the Illinois Constitution of 1970 clearly mandates a different conclusion and leaves with the General Assembly the power to enact general, uniform and statewide provisions governing the conduct of all elections. The time elections must be held, their notice requirements and whether they will be partisan or nonpartisan are matters relating to the conduct of elections which are of statewide concern and are restricted by the Constitution itself to State control. While it is clear a local governmental unit may, by referendum, change its form of government and may determine what officers it will have and their terms of office, I do not find in the power granted by article VII, section 6(f) to "provide for its officers, their manner of selection and terms of office" all that defendants find there. I would understand it to be simply a grant of power to a local governmental unit to determine what type of officers it will have, whether they will be elected or appointed and, if so, by whom. If the manner of selection of officers is intended by the constitution to include the election process itself, as urged by defendants, then, of course, there will be little limitation on what each of

the many units of local government might separately choose to do in this regard.

I note also that article VII, section 7(2), (3), gives the same powers to counties and municipalities *other* than home-rule units to change their form of government and to provide for officers and their manner of selection. It would seem apparent that the fact the city of Aurora is a home-rule unit does not in itself add anything to the powers it may have in this regard.

I find nothing in the record of proceedings of the constitutional convention which supports defendant's view (Sixth Illinois Constitutional Convention, Record of Proceedings (1969-1970)) and, to the contrary, it has been said that "[e]lection laws therefore seemed to fall entirely within the jurisdiction of the legislature, rather than that of home rule units or their voters." Baum, *A Tentative Survey of Illinois Home Rule* (pt. 1), 1972 U. Ill. L. F. 137, 146 n. 37.

The questions raised in this case have not been considered by our courts of review and ought to be laid to rest. Certainly it is inevitable that by quo warranto or other appropriate action they will again be presented in Aurora with each election held there contrary to the provisions of the State Election Code and I would resolve them now.