(No. 52051.-

GERALD BOYTOR, Appellant, v. THE CITY OF AURORA *et al.*, Appellees.

*Opinion filed May 22, 1980.—Rehearing denied September 26, 1980.*

Marc E. Webbles, of Geneva, for appellant.

J. Robert Murphy, Corporation Counsel, of Aurora, for appellee City of Aurora.

Puckett, Barnett, Larson, Mickey, Wilson & Ochsenschlager, of Aurora (Peter K. Wilson, Jr., of counsel), for appellee Aurora Election Commission.

Suzan Sutherland, of Springfield, for *amicus curiae* State Board of Elections.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

The plaintiff, Gerald Boytor, brought suit in the circuit court of Kane County requesting a declaratory judgment, injunctive relief, and personal damages against the defendants for alleged violations of the election laws. The trial court granted defendants' pretrial motion to dismiss, the appellate court affirmed (70 Ill. App. 3d 303), and we granted leave to appeal. We affirm.

The series of events from which plaintiff's alleged cause of action arises commenced in November of 1976 when the citizens of Aurora elected to adopt a mayor-aldermanic form of municipal government in place of the commission form which they had used previously. On the following December 7, the city council voted to submit a proposal to the citizens of Aurora at a referendum on January 11, 1977. The referendum posed the question:

"Shall all municipal elections in the City of Aurora be conducted on a non-partisan basis, with a primary election on the first Tuesday of March and a general election on the first Tuesday of April in 1977, and with all future primaries held on the dates set forth in the Illinois Election Code."

On December 11, plaintiff submitted his nominating petition for the primary to determine the Democratic candidate for mayor. No one else submitted a partisan nominating petition, and on December 28 the Aurora election commission voted not to hold a partisan primary because there was "no duplication of candidates to require such a primary."

The referendum was held on January 11, 1977, and the proposal was adopted. Subsequently a nonpartisan primary was held, but plaintiff's name did not appear on the ballot. Plaintiff had filed objections to several nonpartisan nominating petitions, but the objections were overruled and plaintiff did not pursue the matter. Instead, he filed suit against the city of Aurora and the Aurora election commission on July 8. The complaint recites several allegedly illegal acts by the defendants which deprived plaintiff of the opportunity to appear on the primary ballot. Whether these acts were illegal depended on whether the referendum was properly held and whether the city had the authority to hold nonpartisan elections under a mayor-aldermanic form of municipal government. The plaintiff sought three forms of relief: a declaratory judgment that the acts of the defendants recited in the complaint were illegal; an injunction prohibiting such acts in the future; and personal damages resulting from the denial of plaintiff's attempt to appear on the primary ballot. Plaintiff did not challenge the actual mayoral election or the authority of the elected city government.

The defendants' motion to dismiss was allowed, the trial court concluding that the acts set forth in the complaint were within the power of the city. The appellate court affirmed (70 Ill. App. 3d 303) but on different grounds. The appellate court majority reasoned that the plaintiff lacked standing because he waited too long to bring the suit. The newly elected city officials had managed the municipal affairs for several months, the

plaintiff understood his position before the election, and he could have sued to enjoin the election beforehand. The appellate majority also reasoned that in these circumstances public policy precluded entertaining a suit which might undermine the validity of the Aurora city government. In other circumstances we might find an action for declaratory judgment moot and a request for an injunction not yet sufficiently ripe for adjudication. (See *Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 375.) In this case, however, plaintiff's claim for personal damages requires us to consider the legal merits of his complaint.

Plaintiff's argument that the referendum was invalid rests upon his interpretation of section 28—4 of the Election Code (Ill. Rev. Stat. 1975, ch. 46, par. 28—4), which provides in part:

> "The governing body of the unit of local government may by resolution and shall, upon the filing with the clerk or secretary of the governmental unit of a petition signed by a number of qualified electors equal to or greater than 10% of the number who voted in the last general election in the governmental unit and who request such a referendum, provide for the submission of the proposal for such action to the voters of the governmental unit at a general, regular or special election, but in no event later than the first general or regular election occurring at least 78 days after the adoption of such resolution or the filing of such petition, as the case may be."

Plaintiff contends that this section prohibits holding a referendum earlier than 78 days after the resolution to hold one is adopted. We cannot agree. Although the wording of this statute may not be felicitous, its meaning, in our judgment, imposes a maximum, not a minimum. Furthermore, a different construction of that section is not necessary to harmonize it with the other sections of article 28, "Submitting Questions of Public Policy," of the Election Code. Section 28—1 of the Election Code

(Ill. Rev. Stat. 1975, ch. 46, par. 28—1) requires that any petition to submit a public policy question be filed with the proper election officers not less than 78 days before the date of the election at which the question is to be submitted. This section thus imposes on questions submitted by petition the sort of minimum limitation plaintiff would read into section 28—4.

Furthermore, neither section 28—1 nor any other section of the article dealing with questions of public policy imposes a similar limitation on questions initiated by ordinance or resolution of a city council. A plausible rationale for treating the two initiation procedures differently is suggested by section 28—1.2 (Ill. Rev. Stat. 1975, ch. 46, par. 28—1.2), which provides that petitions for the submission of questions of public policy are subject to the same objections, hearings and judicial review as nominating petitions under sections 10—8 through 10—10.1 of the Election Code (Ill. Rev. Stat. 1975, ch. 46, pars. 10—8 through 10—10.1). Since this procedure does not apply to initiation of a public policy referendum by the city council, the legislature could reasonably conclude that a longer minimum time period between initiation and submission of the question was necessary to allow objection to the petitions but not necessary when the question was initiated by resolution. Of course, the minimum notice provision of section 12—1 of the Election Code (Ill. Rev. Stat. 1975, ch. 46, par. 12—1) applies to a question initiated by resolution as well as to one initiated by petition (Ill. Rev. Stat. 1975, ch. 46, par. 28—4) and prevents the city council from holding a public policy referendum without affording the electorate a certain minimum amount of time to consider the issue. Finally, the amendments to the Election Code which become effective in December of 1980 show that when the legislature explicitly dealt with the questions of a minimum time period between the initiation of a public question by

resolution and the referendum, it did not apply the same period to public questions initiated by resolution and those initiated by petition. (Ill. Rev. Stat. 1979, ch. 46, par. 28—2.) We conclude therefore that section 28—4 does not impose a minimum time period of 78 days between adoption of the resolution calling for a referendum and the holding of the referendum.

The plaintiff also argues that the city does not have the power to hold nonpartisan elections. Article VII, section 6(f), of the Illinois Constitution of 1970 provides:

"(f) A home rule unit shall have the power subject to approval by referendum to adopt, alter or repeal a form of government provided by law, except that the form of government of Cook County shall be subject to the provisions of Section 3 of this Article. A home rule municipality shall have the power to provide for its officers, their manner of selection and terms of office only as approved by referendum or as otherwise authorized by law. A home rule county shall have the power to provide for its officers, their manner of selection and terms of office in the manner set forth in Section 4 of this Article."

We have held that this provision authorizes a home rule municipality to alter the specific forms of government and officers provided in the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, pars. 1—1—1 through 11—151—5). (*Clarke v. Village of Arlington Heights* (1974), 57 Ill. 2d 50.) Given the direction of section 6(m) of article VII of the Illinois Constitution of 1970 to construe home rule powers broadly we believe that the power to choose the "manner of selection" should include the ability to decide by referendum whether the election of the officers should be on a partisan or nonpartisan basis.

Plaintiff and *amicus*, the Illinois State Board of Elections, argue, however, that whether an election shall be conducted on a partisan or nonpartisan basis is exclusively a matter of statewide concern and therefore not within the ambit of municipal powers in the first instance.

To support this proposition, they cite section 4 of article III of the Illinois Constitution of 1970, which provides:

"The General Assembly by law shall define permanent residence for voting purposes, insure secrecy of voting and the integrity of the election process, and facilitate registration and voting by all qualified persons. Laws governing voter registration and conduct of elections shall be general and uniform."

A review of the report of the Committee on Suffrage and Constitution Amending to the sixth constitutional convention reveals that the above provision is concerned with registration and the mechanical procedures for holding elections, not with the partisan or nonpartisan nature of the election, which more closely concerns the manner of selecting officers. (7 Record of Proceedings, Sixth Illinois Constitutional Convention 2343-60; *cf. Bridgewater v. Hotz* (1972), 51 Ill. 2d 103.) Additionally, the new amendments to the Election Code effective in December 1980 indicate that the General Assembly recognized that under article VII a municipality could choose to hold nonpartisan elections. (See Ill. Rev. Stat. 1979, ch. 46, pars. 10—3.1, 2A—1.2(c)(1), 2A—1.2(d).) We conclude therefore that a municipality may choose by referendum to conduct its elections on a nonpartisan basis.

Plaintiff further argues that the city did not have the authority to hold its primary election on the first Tuesday in March, as required by the referendum, rather than on the second Tuesday in February, as specified in section 7—5 of the Election Code (Ill. Rev. Stat. 1975, ch. 46, par. 7—5). We have held that the city had the power to hold nonpartisan elections. Section 7—5 concerns partisan, not nonpartisan, elections. Section 4—3—5 of the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 4—3—5) sets a date for nonpartisan primaries for officers of municipalities that have adopted the commission form of government but does not apply to cities under the mayor-

aldermanic form of government. Plaintiff has not pointed to, and we have not found, any other statute effective in 1977 which might govern primary dates for nonpartisan elections under a mayor-aldermanic form of government. Thus no statute specified a primary date for the city of Aurora during the time relevant to this dispute. (But see Ill. Rev. Stat. 1979, ch. 46, par. 2A—1.2(d) (effective Dec. 1, 1980).) Under these circumstances we cannot conclude that the city did not have the authority to set a date for its primary. Nor does plaintiff's related contention that the Aurora election commission unlawfully failed to hold absentee balloting for the 30 days before the date specified for partisan primaries have any merit. Since the city did not hold a partisan primary on that date, it need not have held absentee balloting for the 30 days prior to that date.

Plaintiff also argues that the actions of the defendants in some manner unconstitutionally deprived him of access to the ballot. He does not contend that nonpartisan elections are in themselves unconstitutional. Furthermore we have affirmed both the authority of the city to hold nonpartisan elections and the manner in which the city adopted the nonpartisan plan. Plaintiff's claim apparently is that the sequence of events involved in this case violates the principles of equal protection and due process. The applicable statutes and ordinances in this case, however, did not impose a greater burden on the plaintiff than on any other potential candidate. Plaintiff's due process claim is apparently based on the premise that the city could not change from a partisan to nonpartisan election method once the period for making partisan nominations opened. Plaintiff has, however, cited no authority for this proposition. The situation might be different if the change had imposed a kind of legal disability on plaintiff which made it impossible for him or for anyone else similarly situated to run for office; but the plaintiff has not alleged that any actions of the defendants prevented him from running for

office as a nonpartisan candidate. We therefore affirm the judgment of the appellate court.

*Judgment affirmed.*